[No. B159435. Second Dist., Div. Six. Apr. 29, 2003.]

ALFONSO ELIZARRARAS et al., Plaintiffs and Appellants, v. L.A. PRIVATE SECURITY SERVICES, INC., et al., Defendants and Respondents.

## COUNSEL

Law Office of Earnest C.S. Bell and Earnest C.S. Bell for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Larry A. Schwartz for Defendants and Respondents.

## OPINION

**GILBERT, P. J.**—A restaurant that serves alcoholic beverages hires a company to provide security for a dance party one evening on its premises. Two intoxicated minors attend the party and after an altercation, leave. The minors drive away and shortly thereafter are involved in a fatal accident.

Here we conclude the private security company did not breach a duty to the minors and it has statutory immunity under Business and Professions Code section 25602 for failing to prevent a minor from consuming alcoholic beverages.

Plaintiffs Alfonso and Beatriz Elizarraras appeal summary judgment in favor of L.A. Private Security Services, Inc., Jose Angel Bretado, and Federico Amezquita (collectively LAPSS). We affirm.

### FACTS

During the late evening of April 6, 2000, Sophia Elizarraras, age 15, and Patricia Yvette Castro, age 18, entered Leonardo's, an Oxnard bar, dance club, and restaurant. Between 400 and 500 patrons were at Leonardo's that evening for a party. The owners of Leonardo's engaged LAPSS to supplement the security provided by Leonardo's employee-security guards.

Sophia and Patricia had been drinking when they entered the club, and during the evening, they consumed alcohol. Near midnight, another female patron hit Sophia with a bottle or glass, causing her head to bleed. Leonardo's employees intervened and offered Sophia medical assistance. She refused and she and Patricia either left or were escorted from the club. A Leonardo's employee assisted Sophia in entering Patricia's automobile and in securing her seat belt.

Shortly thereafter, Patricia drove northbound on the 101 Freeway at a speed of 100 miles an hour or more. She collided with a light pole near the

Seaward Avenue exit and the automobile rolled down an embankment, struck a tree and chain link fence, and overturned. Sophia was ejected. The girls died immediately from head and chest injuries. Patricia's blood-alcohol level was 0.21 percent at the time.

The parents and heirs of Sophia brought an action for wrongful death, survival action, and negligence, among other causes of action, against Leonardo's and LAPSS. In a fourth amended complaint, they allege that LAPSS, as an agent or employee of Leonardo's, "sold and served alcoholic beverages" to Sophia and Patricia despite knowledge that the girls were minors and were intoxicated. They also allege that LAPSS rendered no medical assistance to Sophia and "escorted [her] out the back entrance of the tavern" where she entered an automobile driven by an intoxicated minor.

LAPSS answered the fourth amended complaint and then moved for summary judgment. It contended that under the circumstances, it owed no duty of care to the girls and that any failure to act was not the proximate cause of their injuries and deaths.

Declarations, deposition excerpts, and other evidence established this:

Jose Bretado, the president of LAPSS, declared that Leonardo's requested LAPSS to provide "excess security" the evening of April 6, 2000. Bretado stated that LAPSS is a security business and not a licensed seller of alcoholic beverages.

Federico Amezquita declared that he and two other LAPSS security guards worked at Leonardo's that evening.[1] Amezquita "work[ed] security" outside the front door, searching patrons for weapons and drugs and preventing intoxicated persons from entering the club. The other LAPSS security guards were "stationed" near the bathrooms. Amezquita stated that he did not sell or furnish alcohol to anyone that evening nor did he observe any altercations or injuries to patrons.

Armando Lopez, an owner of Leonardo's, testified that Leonardo's security guards and the LAPSS security guards were instructed to circulate throughout the premises to ensure that minors were not consuming alcohol. Lopez stated that the LAPSS security guards were not assigned to a particular post that evening.

The former assistant manager of Leonardo's, Armando Carrera, testified that he sought to break up an altercation between Sophia and another patron,

---

[1]The two security guards, Ruben Hernandez and Rutilio Ortez, have not been served with the summons and complaint in this lawsuit, nor have they entered an appearance.

but "the fight . . . already was apart." Leonardo's bartender and an employee-security guard broke up the fight. Carrera saw that Sophia was bleeding and he offered assistance. Sophia refused help and stated that she was leaving. She went out the back door of Leonardo's, accompanied by other girls.

Victor Rubio, a Leonardo's security guard stationed in the parking lot, testified that Sophia and Patricia were "very, very angry" when they walked from the back door of Leonardo's to their automobile. Rubio offered to summon an ambulance but Sophia refused. Patricia "use[d] bad language" to deter Rubio from calling the police. She stated that she would take Sophia to a hospital. Rubio assisted Sophia into Patricia's automobile and with her seat belt. Patricia left "burning rubber, very fast."

Cindy Ramirez, Sophia's friend, testified that a Leonardo's security guard pushed Sophia out the back door. Ramirez saw the girls arrive at Leonardo's and she believed that they had been drinking. They were "too happy" and "their eyes were kind of glossy." Rubio saw the girls when they arrived at the Leonardo's parking lot and he also believed the girls had been drinking.

Sophia's sister, Lupe Elizarraras, declared that she saw Sophia and Patricia consuming beer and tequila at Leonardo's that evening. The girls appeared "really drunk."

The trial court granted summary adjudication of six issues raised by LAPSS. In its ruling, the trial judge reasoned that as a matter of law, LAPSS had no duty of care to Sophia or Patricia and its acts or omissions were not the proximate cause of the girls' deaths. The heirs then dismissed the remaining cause of action against LAPSS, and the trial court entered summary judgment.

The heirs appeal and contend that LAPSS had a duty of care to the girls similar or identical to the duty of care owed by Leonardo's.

DISCUSSION

I

The heirs argue that LAPSS breached a duty of care to Sophia and Patricia by not acting as reasonable security guards under the circumstances. (*Marois v. Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193, 200 [208 Cal.Rptr. 384] ["By contracting with the business to provide security services, the security guard creates a special relationship [to] the

business's customers. This relationship, in and of itself, is sufficient to impose on the guard the obligation to act affirmatively to protect such customers while they are on the business premises."].) They assert that a business owner as well as a security company retained by the business have the duty to protect patrons from reasonably foreseeable criminal acts. (*Balard v. Bassman Event Security, Inc.* (1989) 210 Cal.App.3d 243, 249 [258 Cal.Rptr. 343] ["[T]he relationships are essentially identical in that from each there arises a duty to protect the customer from third party criminal activity occurring on the business's premises."].) The heirs therefore contend that LAPSS has a duty identical to that of the alcohol licensee (Leonardo's) to prevent minors from consuming alcohol on the licensed premises. They add that breach of duty and causation are factual issues to be resolved by the trier of fact.

In sum, they contend that LAPSS breached its duty of reasonable care by not preventing minors or intoxicated patrons from entering Leonardo's, not preventing minors who have entered from consuming alcohol there, not summoning medical assistance for Sophia, and not preventing Patricia from driving away.

■ In reviewing a summary judgment, we independently review the record before the trial court to determine if there is a triable issue of material fact. (*Paz v. State of California* (2000) 22 Cal.4th 550, 557 [93 Cal.Rptr.2d 703, 994 P.2d 975]; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) A defendant may be entitled to summary judgment if he establishes that a complete defense exists to a cause of action. (Code Civ. Proc., § 437c, subds. (*o*) & (p); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493] [defendant meets his burden of showing a cause of action has no merit if he establishes that one or more elements of the cause of action cannot be established].)

## II

■ The threshold element of a negligence cause of action is the existence of a duty of reasonable care. (*Paz v. State of California, supra,* 22 Cal.4th 550, 559.) Whether a duty of care exists is a question of law to be determined on a case-by-case basis. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

■ For several reasons, the trial court did not err by granting summary judgment.

First, undisputed evidence establishes that LAPSS is not a licensed seller of alcoholic beverages and it did not sell alcoholic beverages to Leonardo's

patrons that evening. Pursuant to Business and Professions Code section 25602, subdivisions (b) and (c), and section 25602.1, LAPSS has statutory immunity for failing to prevent a minor from consuming alcoholic beverages.[2]

Section 25602, subdivision (b), provides: "No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section [to an "obviously intoxicated person"] shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage." Subdivision (c) states the legislative intent that "the consumption of alcoholic beverages rather than the serving of alcoholic beverages [is] the proximate cause of injuries inflicted upon another by an intoxicated person."

█  Section 25602.1 provides an exception to the "sweeping civil immunity" of section 25602 if alcoholic beverages are sold to an obviously intoxicated minor. (*Strang v. Cabrol* (1984) 37 Cal.3d 720, 724 [209 Cal.Rptr. 347, 691 P.2d 1013] [§§ 25602 and 25602.1 provide "sweeping civil immunity" for the sale of alcoholic beverages except where the sale is to an obviously intoxicated minor].) Section 25602.1 provides: "Notwithstanding subdivision (b) of section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed, pursuant to Section 23300 . . . and any other person who sells, or causes to be sold, any alcoholic beverage, to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

The statutory exception of section 25602.1 is a narrow one that is construed strictly. (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1281 [48 Cal.Rptr.2d 229].) The phrase "causes to be sold" requires malfeasance, not acquiescence or mere inaction. (*Id.* at pp. 1276-1277.) The statute requires "an affirmative act directly related to the sale of alcohol, which necessarily brings about . . . the furnishing of alcohol to an obviously intoxicated minor." (*Ibid.*) Moreover, the statute sets forth no duty "to act affirmatively to prevent others, over whom one has no control, from selling alcohol to an obviously intoxicated minor." (*Id.* at p. 1282.) █  As a matter of law, the statutory exception does not apply to LAPSS because the undisputed evidence establishes that it did not sell, furnish, or cause alcohol to be sold or furnished to Sophia and Patricia.

Second, although a security guard may have "a special relationship" with a business patron under some circumstances, sections 25602 and 25602.1

---

[2]All further statutory references are to the Business and Professions Code.

restrict liability concerning the sale or furnishing of alcohol. (*Balard v. Bassman Event Security, Inc.*, *supra*, 210 Cal.App.3d 243, 249 [security guard company and business owner have "essentially identical" duty to protect customers on the business premises]; *Marois v. Royal Investigation & Patrol, Inc.*, *supra*, 162 Cal.App.3d 193, 200 [a security guard has a special relationship with a business patron that obligates the guard to protect the patron while on the business premises].) Section 25602 provides a "sweeping immunity" with but one exception—the sale or furnishing of alcohol to an obviously intoxicated minor. (§ 25602.1; *Strang v. Cabrol*, *supra*, 37 Cal.3d 720, 725.)

The decisions upon which the heirs rely, *Balard v. Bassman Event Security, Inc.*, *supra*, 210 Cal.App.3d 243, and *Marois v. Royal Investigation & Patrol, Inc.*, *supra*, 162 Cal.App.3d 193, concern the liability of a security guard company for failing to protect a business patron from the criminal acts of third persons. In *Marois*, a customer of a fast-food restaurant was assaulted in the parking lot. In *Balard*, a female customer was sexually assaulted by men parked in an automobile near the business premises. Neither decision involved the sale or furnishing of alcohol to minors or sections 25602 and 25602.1.

Although Leonardo's may have employed LAPSS in part to ensure that minors were not consuming alcoholic beverages, that job responsibility is not equivalent to a legal duty of care to underage patrons to prevent them from drinking or driving while intoxicated. (*Jackson v. Clements* (1983) 146 Cal.App.3d 983, 988 [194 Cal.Rptr. 553] [police officers who investigated party at which minors were consuming alcoholic beverages had no duty to prevent intoxicated minors from driving].)

Third, the heirs have not set forth specific facts showing a triable issue of material fact regarding causation and breach of an alleged duty to prevent the altercation between Sophia and the other patron, to provide medical assistance to Sophia, or to prevent Patricia from driving. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] [once defendant shows that plaintiff's cause of action cannot be established or that a complete defense exists, the burden shifts to plaintiff to show the existence of a triable issue of material fact]; *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 974 [81 Cal.Rptr.2d 871] [same].) LAPSS security guard Amezquita declared that he did not see Sophia or Patricia that evening and therefore did not know if they were served alcoholic beverages or were intoxicated. He also did not see the altercation or the assault on Sophia. The assistant manager, the bartender, and a Leonardo's security guard quickly broke up the altercation and offered Sophia medical

assistance which she refused. The Leonardo's parking lot security guard also offered Sophia medical assistance. The heirs have not set forth specific facts to the contrary. (*Saelzler*, at p. 777 [plaintiff cannot show that roving security guards would have encountered her assailants or prevented the attack]; compare with *Trujillo v. G.A. Enterprises, Inc.* (1995) 36 Cal.App.4th 1105, 1108-1109 [43 Cal.Rptr.2d 36] [security guard saw youths surround and threaten business patron but did not quell disturbance or summon police].)

In view of our discussion, it is not necessary to discuss the remaining arguments advanced by LAPSS.

The judgment is affirmed. Respondents shall recover costs on appeal.

Yegan, J., and Coffee, J., concurred.