[No. D040351. Fourth Dist., Div. One. Dec. 12, 2003.]

NORMA GUERRERO, a Minor, etc., et al., Plaintiffs and Appellants, v. SOUTH BAY UNION SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Kircher & Dikmen, J. Scott Kircher, Theodore Dikmen; and John G. Kiwan for Plaintiffs and Appellants.

Stutz, Gallagher, Artiano, Shinoff & Holtz, Daniel R. Shinoff, Jeffery A. Morris and Paul V. Carelli for Defendant and Respondent.

OPINION

**HUFFMAN, Acting P. J.—**

I

INTRODUCTION

Norma Guerrero (Norma), by and through her guardian ad litem, Maria Guerrero, brought this action against South Bay Union School District (South Bay or the District) alleging that South Bay failed to adequately supervise her dismissal from school and as a result, she was injured while crossing a street adjacent to the school shortly after school had ended for the day. Norma appeals from a judgment of dismissal entered against her after the trial court granted defendant South Bay's motion for summary judgment. Norma contends the trial court improperly concluded that South Bay owed her no duty of care, and that Education Code section 44808 [1] provided South Bay with immunity as a matter of law. We find the trial court correctly determined that South Bay did not owe Norma a duty of care at the time of the events which caused her injuries. Accordingly, we will affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 1999, Norma was seriously injured when a car struck her on a street next to Godfrey G. Berry Elementary School (Berry Elementary). South Bay operates Berry Elementary. On the day of the accident, Norma was a six-year-old first grade student at Berry Elementary. First and second graders at Berry Elementary are dismissed at 2:00 p.m., and Norma's class was dismissed on schedule on the day of the accident. Older students at Berry

---

[1] All further statutory references are to the Education Code unless otherwise specified.

Elementary are dismissed at 2:25 p.m. Norma's older brother, Miguel Guerrero (Miguel), was a fourth grader at Berry Elementary on the day of the accident and was dismissed from class at 2:25 p.m.[2] The accident occurred at approximately 2:30 p.m.

The accident apparently occurred while Norma was waiting with Miguel and her other siblings to be picked up from school. Miguel saw a boy playing with a toy across the street from the school and crossed the street to get a closer look. Norma then crossed the street as well. A short while later, Norma decided to return to the side of the street where the school is located. As Norma was crossing the street, she was struck by a car driven by Ana Ramos Dye.

Norma filed a complaint against South Bay, the City of San Diego, and Dye.[3] In her complaint against South Bay, Norma alleged that South Bay breached its duty of care by, inter alia, "fail[ing] to supervise the students when school ended" and "fail[ing] to provide adequate procedure and controls for the students, including [Norma], to be picked up by parents and others after school."

South Bay moved for summary judgment, claiming section 44808 provided it with immunity for the accident, which occurred off campus and after school hours. In addition, South Bay claimed it owed no duty to Norma at the time of the accident and that none of its policies evinced an intent on its part to assume any such duty. Norma opposed South Bay's motion for summary judgment. She claimed South Bay owed her a duty of care and that South Bay's policies demonstrated it had assumed such a duty. She also maintained that South Bay failed to establish that section 44808 provided it with immunity under the circumstances of this case.

The trial court granted South Bay's motion for summary judgment. The court concluded that section 44808 provided South Bay with immunity as a matter of law, and that South Bay owed no duty to Norma because the final dismissal bell had rung and she had been picked up by an older sibling. Thereafter, the court entered a final judgment of dismissal. Norma filed a timely appeal.

---

[2] Norma claimed before the trial court that whether Miguel was present at the time of the accident was a matter in dispute. This claim was based upon the testimony of one of Norma's other sisters, who was present at the accident scene and who said that Miguel was in class at the time of the accident. However, Miguel testified in his deposition that he was present at the scene at the time of the accident, and the trial court implicitly concluded that it was undisputed that Miguel was in fact present. In any event, the trial court concluded that it was undisputed that the accident occurred after all classes had been dismissed for the day. Norma does not dispute this conclusion. Accordingly, whether Miguel was present or not is not a material fact.

[3] Norma dismissed her cause of action against the City of San Diego and has settled with Dye.

## III

## DISCUSSION

### A.  *Standard of Review*

" ' "Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] 'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations].' [Citation.] 'All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.]' [Citation.] We review the record de novo to determine whether defendants met their burdens of proof. [Citation.]" [Citation.]' " (*Thunderburk v. United Food & Commercial Workers' Union* (2001) 92 Cal.App.4th 1332, 1337 [112 Cal.Rptr.2d 609].)

■ "The threshold element of a negligence cause of action is the existence of a duty of reasonable care. [Citation.] Whether a duty of care exists is a question of law to be determined on a case-by-case basis. [Citation.]" (*Elizarraras v. L.A. Private Security Services, Inc.* (2003) 108 Cal.App.4th 237, 242 [133 Cal.Rptr.2d 302].) Accordingly, we review de novo the trial court's determination that South Bay did not owe Norma a duty of care at the time of the accident. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] [determining de novo existence and scope of duty owed in negligence case].) We also review de novo the trial court's determination that South Bay established its affirmative defense of immunity pursuant to section 44808 as a matter of law. (See *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1354 [104 Cal.Rptr.2d 183] [stating whether state agency was protected by sovereign immunity raised question of law subject to de novo review].)

### B.  *South Bay Did Not Owe a Duty of Care to Norma at the Time of the Events Which Caused Her Injury*

■ A school district owes a duty of care to its students because a special relationship exists between the students and the district. (*Rodriguez v. Inglewood Unified School District* (1986) 186 Cal.App.3d 707, 723 [230 Cal.Rptr. 823].) The special relationship, by itself, does not create liability. Tort liability for governmental entities is based upon statute. (*Hoff v. Vacaville Unified School District* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522]; *Ramirez v. Long Beach Unified School District* (2002) 105 Cal.App.4th 182, 188 [129 Cal.Rptr.2d 128] (*Ramirez*).)

Norma contends that South Bay is responsible for her injuries even though they occurred in an accident off school grounds and after school. She argues, in the alternative, that the accident was caused by South Bay's failure to properly supervise her while on school grounds or that the school undertook to supervise her activities by reason of certain district policies. We will reject both contentions.

Norma recognizes that South Bay's liability in this case is governed by section 44808, which provides: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

Under section 44808, South Bay would not be liable for injuries off campus and after school unless they were the result of the District's negligence occurring on school grounds or were the result of some specific undertaking by the District, which was then performed in a negligent manner. In order to avoid the limitations of the statute, Norma argues her injuries were caused by the school's negligence in the manner of her supervision while on school grounds. Making such argument, Norma relies heavily upon *Hoyem v. Manhattan Beach City School District* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*). In *Hoyem*, the court addressed an injury to a student as a result of being struck by a motorcycle some distance from the school grounds. The student had left the school without authorization and was injured after his departure. The school defended on the basis that the injury occurred off campus and was thus outside the statute. The court rejected that argument finding that the school failed to properly supervise the student in allowing him to leave and thus the question was whether the on campus negligence was the proximate cause of the off-campus injury. (*Id.* at p. 516; see also *Brownell v. Los Angeles Unified School District* (1992) 4 Cal.App.4th 787, 795–796 [5 Cal.Rptr.2d 756] (*Brownell*).) Norma also cites other cases where a school's negligent supervision on campus has led to possible liability for off-campus injuries. (E.g., *Perna v. Conejo Valley Unified School District* (1983) 143 Cal.App.3d 292, 295 [192 Cal.Rptr. 10] (*Perna*).) Those cases do not support Norma's argument in this case.

Each of the cases in which schools have been held to have a duty of care for the safety of students off campus and after school arises from circumstances where school personnel did something on campus or failed in their supervisory duties on campus. *Hoyem* involved the school's failure to adequately address the process of keeping students on school grounds during the school day. (*Hoyem, supra,* 22 Cal.3d 508.) *Perna, supra,* 143 Cal.App.3d 292, involved a teacher who kept the children after school to grade papers knowing that crossing guards would not be available and that the children would have to cross a busy street. In *Brownell, supra,* 4 Cal.App.4th 787, the school had special knowledge of the potential for gang violence and under the circumstances of that case was required to exercise reasonable care in the dismissal of its students.[4]

Norma's case does not present any basis for constructing a duty to exercise reasonable care for her safety after she was released from school. Although she argues the District failed in its duty to supervise her while on school grounds, she does not articulate what the school's duty should have been or what action the school should have taken. No evidence was presented in the summary judgment proceeding that the District or the school supervised the public street where Norma and her siblings waited to be picked up. Nor are there any facts presented to show how the on-campus conduct of the school related to the off-campus injury. In sum, Norma's actual position has to be that South Bay had a duty to supervise the students after school, on the public street until family has picked them up or they have been safely escorted home. Otherwise, there is no factual connection to Norma's release from school in the company of her siblings and her unfortunate accident after she was released from school.

The facts of the accident are not in dispute. Norma was out of school, with her siblings, on a public street awaiting her parent. According to District authority, the school provided crossing guards and notified the parents as to the location to pick up children. The school did not provide staff on the street after school to oversee the activities of the children who had been properly released from classes. In order for this court to construct a duty of care under the circumstances, we would have to conclude that the responsibility to "exercise reasonable care in permitting students to leave school premises" (*Brownell, supra,* 4 Cal.App.4th at p. 796, fn. 3) continues until the children have been safely picked up or perhaps safely returned home in the case of those who may walk home. No case has created such a sweeping responsibility for our public schools and we decline to be the first to do so.

---

[4] Although the appellate court found that the school owed a duty of care, it found the school had exercised reasonable care as a matter of law and overturned a jury verdict in favor of the student. (*Brownell, supra,* 4 Cal.App.4th at p. 798.)

The dissent seeks to bring this case within the scope of *Hoyem, supra*, 22 Cal.3d 508, by noting that Norma alleges negligent supervision by school personnel *on school grounds*. While Norma may allege such negligence, there is no evidence in this record to support the claim. There is no evidence of any act, or failure to act, by school personnel while Norma was on school grounds that could be described as negligent. Indeed, the record shows that Norma was kept on school grounds until her older siblings were released from school. At that point Norma was routinely released with her siblings to leave the school and await pick-up by her parent at the designated place. There is no evidence the District undertook any duty to supervise Norma until she was safely united with her parent and nothing to show that it erred in the manner in which Norma was released from school on the date of the accident.

Although the dissent argues triable issues of fact exist as to whether there was negligent supervision on school grounds, none is offered in support of the argument. In fact, other than a citation to the respondent's brief, there is no indication what triable issue of fact exists in this case. As we have already stated, we believe the actual basis of the dissent is the theory there was some unspecified duty on the part of the District to supervise Norma until she was picked up. The dissent determines a reasonable juror could conclude that it was foreseeable that a child could leave the school grounds and get hit by a car and thus conclude the school should have taken other precautions. Hence, it is argued the school failed to supervise Norma. Respectfully, a reasonable juror could only find the school at fault if there were a duty to supervise children until safely in the arms of their parents. No such duty exists in statute or case law. Duties to supervise off campus, as we have explained, are restricted by statute and no showing has been made here that the school personnel did or failed to do an act on campus that breached any actual duty of care. No such sweeping duty as constructed by the dissent presently exists, and, in our view, the creation of such duty should be a legislative act, not a judicial discovery.

It has also been argued that the portion of section 44808 which provides, "has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances" creates a common law form of general negligence liability. As the court in *Ramirez, supra,* 105 Cal.App.4th 182, pointed out, the quoted language, in context with the rest of the section, has to refer to the failure to exercise reasonable care during one of the mentioned undertakings. (*Id.* at p. 189.) "To construe it as an independent basis for liability would be to say, absurdly: A district is never liable in negligence unless it acts negligently. Also, the breach must be of a duty, a duty created through one of the undertakings. [Citation] 'The "reasonable care" phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is

meaningless.' " (*Wolfe v. Dublin Unified School District* (1997) 56 Cal.App.4th 126, 129 [65 Cal.Rptr.2d 280] (*Wolfe*), citing *Torsiello v. Oakland Unified School District* (1987) 197 Cal.App.3d 41, 47–48 [242 Cal.Rptr. 752].)

"In essence, the section grants a district immunity unless a student was (or should have been) directly supervised during a specified undertaking." (*Wolfe*, *supra*, 56 Cal.App.4th at p. 129.)

■ Applying the statute to the facts of this case, we find the trial court correctly determined South Bay did not have the responsibility to undertake supervision of the students after school until they reached a place of safety.

C. *South Bay Did Not Undertake Any Specified Responsibilities as to the Students*

In her alternative arguments, Norma points to two District policies, which she claims raise triable issues of fact as to whether the school undertook specific responsibilities as to the students after school and off campus. We will address each separately.

First, Norma contends that South Bay's administrative regulation AR-5142(a) represents a specific undertaking by the District. The section provides in relevant part: "The principal of each school shall ensure that certificated employees, teacher aides or yard aides supervise the conduct and safety, and direct the play, of students of the school *who are on school grounds* before and after school, during recess, and during other intermissions." (Italics added.) She argues that the section creates a triable issue of fact as to whether such regulation dealt with students in circumstances similar to hers.

The difficulty with Norma's contention as to this regulation is that by its plain language it relates to on-campus activities on school grounds. The school does provide an after-school and a before-school program. There is nothing in this record to even imply that the purpose of the section is to address students released from school and awaiting parents. Indeed, the school handbook addresses the place where parents should pick up children after school as well as the proper departure place for those who walk to and from school. It directs the parents to the place where students should be picked up at dismissal time. Nothing has been presented to connect this after- and before-school on-campus activity directive, regarding activities on school grounds, to the school's undertaking of continued responsibility for students after dismissal from the campus. In fact, the record is clear that South Bay has never undertaken to provide supervision for students who have been dismissed from school and who are awaiting their parents.

Finally, Norma asserts that South Bay administrative regulation AR-5142(d) entitled "Students Left on Site After School Hours," creates a triable issue of fact as to whether the District has specifically undertaken a duty to students in her situation. AR-5142(d) requires the school to do the following with regard to students left on school property:

"1. Notify the principal or designee immediately.

"2. Attempt to reach parents/guardians . . .

"3. Remain on site until an adult comes to retrieve the student.

"4. Notify the Superintendent by 5 p.m. if there is possibility that law enforcement may be called to assist the student.

"5. As a last resort, contact law enforcement who may remove the student.

"6. In cases of repeated incidents where parents/guardians have been late in picking up their child, notify the parents/guardians in writing of the parental responsibilities and consequences for their child."

Relying on the fact that she had only been out of school a short time and was on an adjacent street when she was injured, Norma argues this section demonstrates that the District has specifically undertaken to supervise students who are not timely collected by their parents. Again we disagree with her contention.

The section is plainly addressed to circumstances where students are left "on site," i.e., on the school grounds. It does not state a plan, purpose or undertaking to deal with students who have left the school grounds. Again, we note the school has provided crossing guards and direction to parents as to the appropriate pick-up points for their children. There is nothing in this record to even remotely suggest that the directive to principals for dealing with children who have been left on school grounds was intended as a specific undertaking for students off the premises.

As the court in *Ramirez* noted, tort liability for governmental entities is based on statute. Here, section 44808 limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking. (*Ramirez, supra,* 105 Cal.App.4th at p. 188.) Respectfully, we can find nothing in administrative regulation AR-5142(a) or (d) to hint at, let alone specifically undertake, the requirement for supervision of dismissed students who have left the premises. The fact that the student may be on a nearby street as opposed to the next street over does not change the fact the student was off premises and dismissed from school.

## CONCLUSION

Injury to a child in a traffic accident like the one in this case is always a tragedy. One can even sympathize with a parent's belief that the school should have watched over the children until they can be collected by their parents. We are convinced, however, that the statutory scheme in this case neither requires nor permits the extension of a duty of care to the schools of California to supervise children properly dismissed from school until their parents arrive. In order to provide that level of supervision in this case the District would have to have sufficient staff to control each of the students it dismissed to ensure that the student is either safely home or safely picked up by parents or guardians. Perhaps such added supervision would be in the public interest; however, policy decisions of that nature should be made by the Legislature or the administration of the school districts, not on a case-by-case basis. Section 44808 has struck a balance in which the Legislature has immunized the schools from tort liability for off-campus conduct unless the District has undertaken such responsibility or the negligence occurs in the discharge of the school's ordinary, on-campus, during school hours activities. The case before us does not come within any of the exceptions to that legislatively declared immunity. We decline to judicially expand the statutory exceptions.

## DISPOSITION

The judgment is affirmed.

Nares, J., concurred.

**AARON, J.**—dissenting:

### A. *Introduction*

The majority holds that it is reasonable, as a matter of law, for an elementary school to fail to supervise the after-school dismissal of a six-year-old first grader, allowing her to wander off school property and into the street to be hit by a car five minutes after the school bell rings. The majority further holds that an elementary school that has adopted specific policies and regulations governing the supervision of students after school including one entitled, "Students Left on Site After School Hours," that requires school personnel to notify the principal, attempt to reach parents or guardians, and "[r]emain on site until an adult comes to retrieve the student" has not assumed responsibility for a child, such as Norma, who is not picked up by her parent or guardian immediately at dismissal time. Because I cannot agree that the school owed no duty to Norma under the circumstances of this case, I dissent.

B. *South Bay Owed Norma a Duty of Care*

California Supreme Court cases have "long established that a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*).) "The standard of due care imposed on school authorities in exercising their supervisorial responsibilities is that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." (*Brownell v. Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 795–796 [5 Cal.Rptr.2d 756] (*Brownell*), citing *Hoyem, supra*, 22 Cal.3d at p. 513.)

In *Hoyem*, the court considered "whether, under California law, a school district may be held liable when, as a result of school authorities' negligent supervision of students on school premises, a pupil leaves the school grounds during school hours and is subsequently injured by a motorist." (*Hoyem, supra*, 22 Cal.3d at pp. 511–512.) In concluding a school district could be liable under such circumstances, the court noted: "[N]o California decision suggests that when a school district fails to properly supervise a student on school premises, the district can automatically escape liability simply because the student's ultimate injury occurs off school property. [Citation.] . . . [*S*]*chool districts must exercise reasonable care in supervising their pupils while the pupils are on school premises.* A district may be held liable if its breach of that duty proximately causes a student's injury." (*Id.* at p. 515, italics added.)

It is also established that a school district may be liable when, as a result of a school's failure to supervise students on school grounds after school, a student leaves the premises and is injured. (See *Brownell, supra*, 4 Cal.App.4th at pp. 795–796.)

In *Brownell*, the Court of Appeal considered whether a high school owed a duty of care to a student who was shot by a gang member while waiting for a bus off school grounds, after school hours. The court concluded, "[A] school district may be held liable for injuries suffered by a student off school premises and after school hours where the injury resulted from the school's negligence while the student was on school premises." (*Brownell, supra*, 4 Cal.App.4th at p. 795.)

With particular relevance to this case, the *Brownell* court held that a school has a duty to exercise reasonable care in supervising the dismissal of students and specifically, in permitting students to leave school premises: "[T]he trial

court properly instructed the jury: 'School personnel are under a duty to adequately supervise students while those students are on school premises, *and to exercise reasonable care in permitting students to leave school premises.* A failure to perform these duties is negligence. A school district may be held liable for injuries to a student occurring off school premises, if the occurrence is a reasonably foreseeable [*sic*] result of the conduct of school personnel on the school premises.' " (*Brownell, supra,* 4 Cal.App.4th at p. 796, fn. 3, italics added.)

Norma claims that South Bay "failed to supervise the students when school ended . . . ." It is undisputed that South Bay provides no supervision for students such as Norma, who are waiting for a parent or guardian to pick them up after school is dismissed. The accident occurred just five minutes after school ended for the day, when Norma left school property and entered the street.

In its briefs, South Bay acknowledges that it does in fact owe some duty of care to its students for a period of time after dismissal. South Bay asserts that it has taken "general precautions to minimize the risk of injuries to students after school" by providing a patrolled crosswalk and an after-school program, and also by explaining to parents that they must be on time to pick up their children at dismissal. Relying on *Brownell,* South Bay claims, "[t]hese general precautions show that *South Bay satisfied its duty of care.*" (Italics added.)

On the other hand, South Bay has argued both in the trial court and in this court that it had "no duty to supervise students after the close of the school day . . . ." However, in my view, the cases cited above make it clear that a school's duty to act reasonably with regard to the supervision of a six-year-old entrusted to its care does not end on the ringing of the final school bell. Under the express language of *Brownell,* South Bay was under a duty to "exercise reasonable care in permitting [Norma] to leave school premises." It is a question of fact whether South Bay fulfilled that duty under the circumstances of this case. (*Brownell, supra,* 4 Cal.App.4th at p. 796, fn. 3.)

A reasonable juror could conclude that it was foreseeable that a six-year-old child, left unsupervised, might leave school grounds, enter the street adjacent to the school and be hit by a car, and could further conclude that precautions beyond those South Bay provided were warranted. A reasonable juror could conclude that in allowing Norma to leave school premises, the school failed to adequately supervise her. This is particularly so in view of Norma's undisputed contention that school personnel knew she and her brother were to be picked up after school by car, by one of their parents or by their older sister.

Contrary to the majority opinion, the holding of *Brownell* was not limited to cases in which the school had "special knowledge of the potential for gang violence." (Maj. opn., *ante*, at p. 270.) Rather, the duty the *Brownell* court articulated was "a duty to adequately supervise students while those students are on school premises, and to exercise reasonable care in permitting students to leave school premises." (*Brownell, supra*, 4 Cal.App.4th at p. 796, fn. 3.) This is the very duty Norma contends exists, and was breached, in this case. If the high school in *Brownell* had such a duty toward its students, then certainly an elementary school owes at least the same duty of care to a first grader.

Even the majority seems to acknowledge that *Brownell* and other cases finding a duty of care for the safety of students off campus and after hours "arises from circumstances where school personnel did something on campus or failed in their supervisory duties on campus." (Maj. opn., *ante*, at p. 270.) However, the majority fails to recognize that this is exactly what Norma alleges; she maintains that school personnel failed to properly supervise her while she was on campus, allowing her to wander into the street where she was hit by a car.

The majority incorrectly concludes that for Norma to prevail, the court would have to "construct a duty" to exercise reasonable care for the students' safety "until the children have been safely picked up or perhaps safely returned home in the case of those who may walk home." (Maj. opn., *ante*, at p. 270.) This is not Norma's position, nor is it a correct statement of what this court would have to conclude to find in Norma's favor. Norma does not propose that the court "construct" a new duty. Rather, the duty Norma asserts is one that is already established in the law—a duty on the part of a school to supervise students on school premises and to exercise reasonable care in allowing students to leave school premises. Norma, a six-year-old who school personnel knew was to be picked up by car by one of her parents or by her older sister, was allowed to leave school property unsupervised and walk into the street, where she was hit by a car just five minutes after school was dismissed. She alleges a failure on the part of school personnel to exercise reasonable care in supervising her on campus, not a failure to supervise her "on the public street [or] until . . . [she was] safely escorted home." (Maj. opn., *ante*, at p. 270.)

The duty Norma alleges was breached—the duty to exercise reasonable care in allowing students to leave school premises—is one that is well established. In my view, whether the school satisfied its duty when it allowed a six-year-old child to leave school premises unsupervised is a question of fact for the jury.

### C. *South Bay Is Not Entitled to Immunity as a Matter of Law Pursuant to Education Code Section 44808*

Education Code section 44808[1] provides: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability *or* has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board." (Italics added).

For the reasons that follow, I would conclude that South Bay was not entitled to summary judgment on the basis of the immunity provided in section 44808.

### 1. *Section 44808 Does Not Provide Immunity for Injuries Resulting from Negligent Supervision on School Grounds*

Under section 44808, a school district is not "liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property," unless certain exceptions apply. In *Hoyem*, the California Supreme Court specifically rejected the "contention that the off-premises situs of [a student's] injuries should absolve [a school district] of all responsibility," pursuant to Education Code section 44808 when a student leaves school grounds because of negligent supervision. (*Hoyem, supra,* 22 Cal.3d at p. 516.) Instead, the court held that section 44808 does not in "any way limit[] a school district's responsibility to supervise students during school hours on school premises." (*Hoyem,* at p. 518.)

As in *Hoyem*, Norma alleges negligent supervision by school personnel on school grounds. Norma complains that as a result of the school's failure to supervise her, she wandered into the street and was hit by a car. In my view, triable issues of fact exist as to whether there was negligent supervision on school property that led to Norma being injured in the public street adjacent to the school. Therefore, I would conclude, under *Hoyem*, that section 44808 does not provide immunity to South Bay as a matter of law under these circumstances.

---

[1] All statutory references are to the Education Code, unless otherwise specified.

## 2. There Are Triable Issues of Material Fact as to Whether South Bay Exercised Reasonable Care in Permitting Students to Leave School Premises

In *Hoyem*, the California Supreme Court also held that section 44808 does not provide immunity when a plaintiff alleges that a school district failed to exercise reasonable care in the exercise of its duty to supervise. "[T]he language of the statute itself specifies that its limitation on liability does not apply to the allegations of the instant complaint. Although the initial portion of the statute provides that 'no school district shall be responsible . . . for the conduct or safety of any pupil . . . at any time when such pupil is not on school property,' the section goes on explicitly to withdraw this grant of immunity whenever the school district, inter alia, *'has failed to exercise reasonable care under the circumstances.'* [Fn. omitted.] Plaintiffs' complaint alleges that the school district failed to exercise reasonable care. Assuming, as we must on appeal from a sustained demurrer, the truth of the allegations of the complaint [citations], section 44808, by its own terms, does not bar liability in the present case." (*Hoyem, supra*, 22 Cal.3d at p. 517.)[2]

Further, the *Hoyem* court noted in the footnote omitted from the above quotation: "That the 'reasonable care' exception in the statute is not accidental is clear from the legislative history. The original bill, passed by the Assembly, was identical to the current statute but did not include the final phrase about reasonable care. That phrase was added by Senate amendment (4 Sen. J. (1972 Reg. Sess.) p. 6247) and then approved unanimously by the Assembly. (4 Assem. J. (1972 Reg. Sess.) p. 7049.) *The intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates.*" (*Hoyem, supra*, 22 Cal.3d at p. 517, fn. 2, italics added.)

In this case, as in *Hoyem*, the plaintiff alleges that the school district failed to exercise reasonable care in the exercise of its duty to supervise its students. I would conclude that triable issues of material fact exist as to whether South Bay exercised reasonable care in the supervision of Norma, and accordingly, that pursuant to *Hoyem*, South Bay was not entitled to summary judgment under its affirmative defense of section 44808 immunity.

The majority concludes that the reasonable care exception to section 44808 immunity applies only to the failure to exercise reasonable care during one of

---

[2] (See also *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014 [4 Cal.Rptr.3d 385, 400]; *Brownell, supra*, 4 Cal.App.4th at p. 795; *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, 296 [192 Cal.Rptr. 10] [all stating that *Hoyem* holds that section 44808 does not apply where a school has failed to use reasonable care in exercising a duty owed to students].)

the specified undertakings set forth in that statute. The majority's conclusion directly conflicts with *Hoyem*. The breach of duty alleged in *Hoyem* was not tied to any of the specified undertakings in section 44808 and yet the *Hoyem* court held that the statute did not afford immunity. The majority's conclusion also conflicts with the plain language of section 44808.

In the case relied on by the majority, *Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126 [65 Cal.Rptr.2d 280], the Court of Appeal held that section 44808's reasonable care exception to immunity applies only where a plaintiff alleges that a school failed to exercise reasonable care while conducting one of the specified undertakings set forth in section 44808. However, the *Wolfe* court itself recognized that its interpretation of section 44808 is contrary to the plain language of the statute and is also contrary to the holding in *Hoyem*. (*Wolfe, supra,* 56 Cal.App.4th at p. 129.)

Further, as the *Hoyem* court noted, the legislative history makes clear that the particular phrasing of the statute was intentional. (*Hoyem, supra,* 22 Cal.3d at p. 517.) While the *Wolfe* court expressed concern that section 44808 could be interpreted to mean that a "[school] is never liable in negligence, unless it acts negligently" (*Wolfe, supra,* 56 Cal.App.4th at p. 129), the legislative history suggests a possible reason why the legislature would have created such a broad exception to the immunity it imparted in section 44808 to clarify that teachers, and therefore school districts, were not to be held *strictly* liable for the conduct or safety of their students off campus. The legislative history notes that then existing law (§ 13557, current § 44807) provided that every teacher is to hold pupils to a "strict account" for their conduct on their way to and from school. (Sen. Com. on Judiciary, Background Information on Assem. Bill No. 1326 (1972 Reg. Sess.) p. 1.) The statute provides that school districts will not be "responsible or in any way liable for the conduct or safety of any pupil . . . unless such district . . . has failed to exercise reasonable care under the circumstances." (§ 44808.)

The California Supreme Court's holding in *Hoyem* is binding authority; the Court of Appeal's contrary statement in *Wolfe* is not. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, while the majority follows *Wolfe,* I believe we are bound by the Supreme Court's decision in *Hoyem*. I would hold that South Bay was not entitled to summary judgment on the basis of section 44808 immunity because there are triable issues of material fact as to whether South Bay performed its duty to "exercise reasonable care in permitting students to leave school premises." (*Brownell, supra,* 4 Cal.App.4th at p. 796, fn. 3.)

### 3. *There Are Triable Issues of Material Fact as to Whether South Bay Specifically Assumed Responsibility for Norma*

In support of her opposition to South Bay's motion for summary judgment, Norma submitted to the court specific school policies and administrative regulations which, in my view, raise at least a triable issue of material fact as to whether South Bay "specifically assumed . . . responsibility or liability" (§ 44808) for Norma's care after the final dismissal bell rang. The majority ignores these policies and regulations, asserting, "the record is clear that South Bay has never undertaken to provide supervision for students who have been dismissed from school and who are awaiting their parents." (Maj. opn., *ante*, at p. 272.)

South Bay administrative regulation AR-5142(a) provides in relevant part: "The principal of each school shall ensure that certificated employees, teacher aides or yard aides supervise the conduct and safety, and direct the play, of students of the school who are on school grounds *before and after school*, during recess, and during other intermissions." (Italics added.) Although South Bay contends the school complied with this regulation by providing both a before-school program and an after-school program, the safety directive is neither expressly nor impliedly limited to providing supervision through such programs. On the contrary, the regulation broadly mandates that there "shall" be adult supervision of students after school, without any reference to whether students are in after-school programs or, instead, are waiting to be picked up after dismissal. A reasonable juror could conclude, on the basis of this administrative regulation alone, that South Bay "specifically assumed . . . responsibility or liability" (§ 44808) for children such as Norma, who are waiting for a parent or guardian to pick them up after dismissal. (South Bay admin. reg. AR-5142(a).)

In addition, South Bay has an administrative regulation, AR-5142(d), "Students Left On Site After School Hours," which expressly sets forth procedures to be followed by school personnel when students remain on school property after dismissal. That policy provides in relevant part as follows:

"1. Notify the principal or designee immediately.

"2. Attempt to reach parents/guardians . . . .

"3. Remain on site until an adult comes to retrieve the student.

"4. Notify the Superintendent by 5 p.m. if there is a possibility that law enforcement may be called to assist the student.

"5. As a last resort, contact law enforcement who may remove the student.

"6. In cases of repeated incidents where parents/guardians have been late in picking up their child, notify the parents/guardians in writing of the parental responsibilities and consequences for their child." (South Bay admin. reg. AR-5142(d).) By adopting this regulation, South Bay has plainly acknowledged that children should not simply be left alone on school grounds after school if a parent or guardian does not pick them up immediately at dismissal time.

The majority asserts that this policy, "does not state a plan, purpose or undertaking to deal with students who have left the school grounds." (Maj. opn., *ante*, at p. 273.) However, the clear purpose of this policy is to ensure that students who are not promptly picked up after school is dismissed, as they are supposed to be, are not left unsupervised. The policy specifically refers to incidents where parents or guardians have been late in picking up their children, and requires school personnel to take action up to and including calling law enforcement authorities to assist such students.

Norma contends the school knew she was to be picked up by one of her parents or by her older sister, and South Bay does not dispute this assertion. Norma maintains she was left unsupervised immediately after school was dismissed, and that as a result, she wandered into the street and was hit by a car. Under the majority's opinion, the determination whether, under this policy, South Bay was responsible for Norma after school was dismissed would turn on the fortuity of whether she left school property or not. But this begs the question. South Bay should not be allowed to escape liability on the ground that Norma was injured in the public street and not on school grounds when the school may be responsible for having improperly allowed her to leave the school grounds in the first place.

I would conclude that there is at least a triable issue of material fact as to whether South Bay "specifically assume[d] . . . responsibility or liability" for Norma under the circumstances of this case. (§ 44808.) In my view, the majority's conclusion to the contrary is untenable.

D. *Conclusion*

I would hold that South Bay had a duty to supervise Norma while she was on school grounds after school, and to exercise reasonable care in permitting her to leave school premises. In my view, whether South Bay fulfilled its duty to Norma is a question of fact to be resolved at trial.

Further, I would conclude that section 44808 does not provide South Bay with immunity as a matter of law because there are triable issues of material fact as to whether there was negligent supervision on school grounds, whether school personnel failed to exercise reasonable care under the circumstances, and whether, by adopting policies and regulations pertaining to the supervision of children after school, South Bay specifically assumed responsibility for Norma under the circumstances of this case.